UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ROLLER, | ) | CIV. 06-4098-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | MOTION FOR |
| GE MEDICAL SYSTEMS | ) | SUMMARY JUDGMENT |
| INFORMATION TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Christopher Roller, filed a pro se complaint alleging that defendant, GE Medical Systems Information Technologies, Inc. (GEMS IT) discriminated against him in violation of the South Dakota Human Relations Act[1] (SDHRA), when it terminated his employment on February 18, 2002. Both Plaintiff and defendant have moved for summary judgment.[2] Defendant's motion for summary judgment is granted.

**I. Background**

Considering the facts in a light most favorable to Roller, Roller was hired by Micro Medical Systems, Inc. in Sioux Falls on or about July 19,

---

[1] This act, codified in Chapter 20-13 of the South Dakota Codified Laws is sometimes referenced as the South Dakota Human Rights Act.

[2] Roller's memorandum in response to GEMS IT's motion for summary judgment is identical to his memorandum in support of his motion for summary judgment.

1999.  Defendant's Statement of Undisputed Material Facts (DSUMF) ¶ 8. Roller was hired by Rich Adcock, who was part owner of Micro Medical and its Vice President of Research and Development.  DSUMF ¶ 9.  In September 2000, Micro Medical was acquired by defendant GEMS IT and Roller stayed on as an employee of GEMS IT.  DSUMF ¶ 10.  Roller worked as a software engineer during his time of employment.  DSUMF ¶ 11.  Bob Moore was hired by Micro Medical in early 2000 and was Roller's direct supervisor for the remainder of Roller's employment with Micro Medical and GEMS IT. DSUMF ¶¶ 12-13.

 Shortly after Roller became employed at Micro Medical, he began telling coworkers that he was "the chosen one" and "gifted."  DSUMF ¶ 15. Roller also told coworkers that the movie, The Truman Show, was based on his life.  Plaintiff's Statement of Undisputed Material Facts (PSUMF) ¶ 2. Roller's stories prompted several of his coworkers to complain that they were uncomfortable.  DSUMF ¶ 17.  This led to a meeting involving Adcock, Roller, and Micro Medical's Vice President of Administration and Human Resources, Kelly Drake.  DSUMF ¶ 17.  As a result of this meeting and subsequent research into Roller's medical history, Drake and Adcock became aware that Roller had been diagnosed with bipolar disorder, but concluded that it did not prevent him from doing his job.  DSUMF ¶¶ 18-23.  Roller contends that he discussed his bipolar condition with Noah Allard, Troy Wollman, and Nate

Kruse, whom he considered to be friends, but there is no evidence that he ever again discussed the condition or related medication with Adcock or anyone in management. DSUMF ¶¶ 24-26.

Roller was a highly regarded programmer and an asset to the company. DSUMF ¶ 27. In his 2000 performance review, he was praised, but was asked to make himself more approachable. DSUMF ¶ 28-29. Although Roller claims that he was not made aware of his performance problems until later, Adcock and Moore noted that Roller's performance began to decline in September 2000. DSUMF ¶ 30-34. Roller was not working at the same level that he had earlier and was not completing his design projects. DSUMF ¶¶ 31-34. Although Roller believes that subsequent performance reviews highlighting his declining performance may not have been written until after his dismissal and that his declining performance was attributable to medication he was taking, Roller does not disagree that his performance was declining in 2001. Deposition of Chris Roller (Roller Dep.) at 122-24.

Roller also was accused of several incidents of inappropriate behavior while employed with Micro Medical and GEMS IT. DSUMF ¶ 37. The first instance was in September 1999, when a coworker, Jennifer DeJong, complained about several comments Roller had made to her. DSUMF ¶ 38. Roller asked DeJong if he could "smell the flowers on her shirt." Roller Dep.

at 75. Roller also made a reference to DeJong concerning a cucumber which he was holding between his legs while he typed. PSUMF at 2.

Roller admits that he had a "flare" for jokes that were not appropriate for the workplace. DSUMF ¶ 44. At one point, Roller left half-full beer cans and fake vomit in a coworker's work area. DSUMF ¶ 45. In the summer of 2000 he placed fake feces on a toilet in the men's room. DSUMF ¶ 46. Later, Roller left fake feces on a urinal during a building renovation, which led a contractor to file a complaint. DSUMF ¶ 47.

Roller also sent several inappropriate emails. One email directed coworkers to take a survey, which included questions such as, "What is Chris's favorite position?," "What is Chris's favorite orifice?," and "What does Chris yell when he climaxes?" DSUMF ¶ 50. Roller also sent out emails questioning GEMS IT's internet policy. DSUMF ¶ 51. In February 2001, Roller, intending to email Bob Moore his supervisor, sent an email to Bob Moore, Vice President of Marketing, which stated, "Bob, thanks for the great links – try this one – www.kiddieporn.com." DSUMF ¶ 52. Roller admits that this was a joke that "backfired." PSUMF at 3.

Roller also had a history of becoming angry with coworkers. DSUMF ¶ 56. During the summer of 2001, Roller was asked to go home for the day after an altercation with Rodney Kindt. PSUMF at 3. Roller was in a bad mood and told Kindt to leave him alone and do his own job. PSUMF at 3.

On February 11, 2002, there was an exchange between Roller and Kevin Impecoven during a meeting which led Impecoven to be concerned about his family's safety.  DSUMF ¶ 61.

On February 18, 2002 GEMS IT placed Roller on leave, which, according to GEMS IT, was because of ongoing performance concerns and inappropriate workplace behavior.  DSUMF ¶ 65.  Roller contends that it was solely the result of the incident with Impecoven.  PSUMF at 4.  Roller remained on leave until April 17, 2002, when Adcock, who also hired Roller, offered Roller a "Separation Agreement and Release."  DSUMF ¶ 66.  Roller then contacted a lawyer regarding a possible suit against GEMS IT, but Roller nonetheless signed the agreement on April 24, 2002.  DSUMF ¶¶ 68-69.  The agreement released GEMS IT from "each and every claim, action or right of any sort, known or unknown, arising on or before the effective date of the agreement," including disability discrimination charges.  DSUMF ¶¶ 70-71.  In exchange for Roller's termination and release of claims, GEMS IT paid Roller his salary through July 26, 2002, and provided him with outplacement assistance.  DSUMF ¶¶ 72-73.  Roller was aware that the agreement could potentially foreclose him from pursuing legal action against GEMS IT.  DSUMF ¶ 74. Roller has not returned any of the compensation he received pursuant to the agreement, although he claims that he will, if he is

awarded $1 billion in this lawsuit. DSUMF ¶ 75, Plaintiff's Statement Refuting Defense's Undisputed Material Facts (PSRDSUMF) at 4.

After his termination, Roller never filed a discrimination complaint with any administrative agency regarding his employment or termination from GEMS IT. DSUMF ¶ 80. Three years later, however, Roller commenced a suit against GEMS IT in a Minnesota state court. DSUMF ¶ 81. This suit was removed to federal court by GEMS IT. In 2006, GEMS IT successfully moved for a change of venue to the District of South Dakota.

Roller's suit is based on alleged bipolar disorder and "Jesus-guy syndrome." DSUMF ¶ 83; PSRDSUMF at 4. Roller was diagnosed with bipolar disorder in April 1999, and has been hospitalized because of this condition on five occasions; four times for 72 hours and once for a week. DSUMF ¶¶ 84-85. Roller claims his medication limits his ability to "joke around," and makes some tasks more difficult and longer to perform. DSUMF ¶¶ 86-88. Roller is able to function, despite his condition, and he is able to communicate normally. DSUMF ¶ 90. Roller is able to groom himself, eat, and sleep without difficulty. DSUMF ¶ 91. Roller can drive, do household chores, and read. DSUMF ¶ 92. Roller lives by himself and is able to manage his own affairs. DSUMF ¶ 93.

Roller has represented himself in court on several occasions, including this suit. DSUMF ¶ 94. Roller has also represented himself in a restraining

order proceeding, a divorce, and the sale of his home. DSUMF ¶¶ 98-99. No court has ever ruled that Roller is unable to represent himself or that he is unable to understand his legal rights. In fact, he has been able to file and respond to motions, conduct discovery, and has taken his own depositions. DSUMF ¶¶ 94-95.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

  A party opposing a motion for summary judgment should include "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." D.S.D. LR 56.1(C). The opposing party should also respond to each numbered paragraph of the moving party's statement of material facts.  Id.  The moving party's statement of facts is deemed admitted if unchallenged by the opposing party. LR 56.1(D).

  In this action, defendant filed a statement of undisputed material facts with its motion for summary judgment.  Roller filed a statement refuting some, but not all, of the material facts presented by defendant.  Roller, who filed a separate motion for summary judgment, also filed his own statement of undisputed material facts.  Pursuant to Local Rule 56.1(D), all material facts that are not disputed by the nonmoving party are deemed to be

admitted. See also Northwest Bank & Trust Co. v. First Illinois Nat'l Bank, 354 F.3d 721, 724-25 (8th Cir. 2003).

### III. Discussion

**1.  Roller's Claim is Time-Barred**

Claims filed under the SDHRA must be filed with the South Dakota Division of Human Rights within 180 days of the alleged violation. SDCL 20-13-29, 20-13-31. Courts lack jurisdiction over SDHRA claims when employees fail to first file their claim with the Division of Human Rights. Wiest v. Montana, 580 N.W.2d 613, 615 (S.D. 1998). Thus, Roller had 180 days from his termination, or until October 23, 2002, to file a claim with the South Dakota Division of Human Rights. Roller does not allege that he ever filed a claim with the Division of Human Rights, let alone one that was timely. Indeed, Roller concedes that he never filed any discrimination charge with a state or federal agency. Roller Dep. at 151, 161.

Roller claims the statute of limitations was tolled pursuant to SDCL 15-2-22, which tolls a statute of limitations if an individual's mental condition prevents him from comprehending his legal rights and acting on them in a rational way. See Merkwan v. Leckey, 376 N.W.2d 52, 52-53 (S.D. 1985) (upholding dismissal of a summons and complaint where the suit was filed after the statute of limitations expired, and allegedly mentally ill plaintiff could comprehend her legal rights and responsibilities).

9

Roller was diagnosed with a bipolar condition. Roller did not present any expert medical testimony, however, to support his allegation that he was unable to meaningfully comprehend his legal rights and act upon them in a rational way. See, e.g., Merkwan, 376 N.W.2d at 52-53 (no expert medical testimony introduced to support plaintiff's claim regarding her mental condition). During the period when Roller claims his action should be tolled, he represented himself in court, namely during his divorce action and in a restraining order proceeding. He also represented himself during the sale of his home. Roller paid his own bills and cared for himself. In sum, there is no evidence that Roller's condition prevented him from understanding his legal rights. Therefore, the statute of limitations was not tolled at any time during the 180 days in which Roller had to file his claim with the Division of Human Rights.

Roller argues that a prior order by Judge Michael J. Davis in this lawsuit established that the statute of limitations was tolled. In his Memorandum of Law & Order, Judge Davis[3] concluded that Roller's pleadings were sufficient to "support tolling and survive a motion to dismiss." Memorandum of Law & Order (Docket 29) at 7. Because Judge Davis was ruling on a motion to dismiss and did not look past the pleadings when

---

[3] Judge Davis presided over the instant case before venue was changed from the District of Minnesota to the District of South Dakota.

considering the merits of Roller's claims, his holding is not dispositive of the issues pending before this court on a motion for summary judgment. At the summary judgment stage, the burden is on the nonmoving party to set forth specific facts by affidavits or otherwise showing that a genuine issue exists. Forrest, 285 F.3d at 691. Roller failed to present any expert medical testimony or other evidence to support his allegation that he was unable to meaningfully comprehend his legal rights to act. Because Roller failed to present such evidence, the court finds that the statute of limitations was not tolled. Thus, GEM IT is entitled to summary judgment.

**2.      Roller's Claim is Barred by the Separation Agreement**

In the alternative, GEMS IT contends that Roller's claim is also precluded by a valid separation agreement. It is well settled that a "voluntary waiver of claims bars future action on [those] claims." Littrell v. City of Kansas City, Mo., 459 F.3d 918, 921 (8th Cir. 2006). The Eighth Circuit has held that a voluntary waiver is one that is unambiguous and arrived at through the assistance of counsel. Id. Roller does not dispute that he spoke to at least one attorney regarding litigation against GEMS IT prior to signing the agreement and that he actually signed the agreement. Roller Dep. at 149-50; Roller Dep. Ex. 13. Roller also admits that he knew he was potentially foreclosing legal action against GEMS IT regarding disability discrimination when he signed the agreement. Roller Dep. at 151.

Roller concedes that pursuant to the agreement, GEMS IT paid him a salary through July 26, 2002, and provided him with outplacement assistance until October 26, 2002, in exchange for his release of legal claims.  Roller accepted this compensation and has not returned any of the salary that he was paid in exchange for the release.

Roller's only argument regarding the separation agreement is that the severance contract is null and void because he was legally disabled from mental illness when he signed it.  In support of this proposition, Roller relies on SDCL 20-11A-2, which states: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined is subject to rescission as provided in chapter 21-12."  SDCL 20-11A-2.  At this stage of litigation, however, the burden is on Roller, as the nonmoving party, to set forth specific facts by affidavits or otherwise showing that a genuine issue exists. Forrest, 285 F.3d at 691.  Roller has failed to present any expert medical testimony or other evidence to support his allegation that he was of unsound mind at the time that he signed the severance agreement.  As the court has already noted, Roller represented himself in court during his divorce  and in a restraining order proceeding.  He also represented himself in the sale of his home.  Moreover, Roller has never been adjudicated incompetent or incapacitated.  Roller's Response to Defendant's Statement of Undisputed

Material Facts ¶ 94; Roller Dep. at 226-30, 293-94. Because Roller has failed to present evidence that he was of unsound mind, the court is satisfied that § 20-11A-2 is not applicable, that the severance agreement bars Roller's suit, and that defendant is entitled to summary judgment. Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (Docket 77) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Docket 84) is denied.

Dated January 30, 2007.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                CHIEF JUDGE